**EAST RIVER SAVINGS BANK, Plaintiff,**

v.

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT and Vanguard Holding Corporation, Defendants.**

**No. 83 Civ. 8031 (RJW).**

United States District Court, S.D. New York.

Dec. 16, 1988.

Bleakley Platt Remsen Millham & Curran, New York City, for plaintiff; John T. Curran, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant Secretary of Housing and Urban Development; Jorge Guttlein, William Perricelli, of counsel.

Philip Irwin Aaron, P.C., Jericho, N.Y., for defendant Vanguard Holding Corp.; Philip Irwin Aaron, Andrew C. Morganstern, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff, East River Savings Bank ("the Bank"), has brought this action against the Secretary of Housing and Urban Development ("HUD") and against Vanguard Holding Corporation ("Vanguard"), a New York corporation, seeking to recover losses it sustained when HUD refused to honor its application for insurance benefits on a residential mortgage it had purchased from Vanguard. HUD has moved, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., to dismiss the claims against it for lack of subject matter jurisdiction and failure to state a claim.[1] In the alternative, HUD seeks summary judgment pursuant to Rule 56, Fed.R.Civ.P. Vanguard has likewise moved, pursuant to Rules 12(b)(6) and 56, Fed.R.Civ.P., to dismiss the claims against it for failure to state a claim, or, in the alternative, summary judgment.

The Bank has cross-moved for summary judgment against HUD and Vanguard. In the alternative, the Bank has moved for leave to amend its complaint pursuant to Rule 15, Fed.R.Civ.P., to add the United States of America and the Department of Housing and Urban Development as defendants; and for an order pursuant to Rule 37, Fed.R.Civ.P., compelling certain discovery from Vanguard.

The case was referred to the Honorable Joel J. Tyler, United States Magistrate, to hear and report pursuant to 28 U.S.C. § 636(b)(1) and Rule 4 of the local rules for proceedings before Magistrates. Thereafter, Magistrate Tyler filed his Report and Recommendation ("the Report"), in which he converted all dispositive motions into motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The magistrate recommended that HUD's motion should be granted in part, and that the Bank's first, second and third claims should be dismissed. The magistrate further recommended that Vanguard's motion should be granted in part, and that the sixth claim as well as that portion of the fifth claim that sounded in negligent misrepresentation or constructive fraud should be dismissed. Magistrate Tyler further recommended that the Bank's cross-motion for summary judgment should be denied in its entirety; that the Bank should be permitted to amend its complaint to name the United States as a defendant; and that the Bank's motion to compel discovery should be held in abeyance, pending the Court's action on the Report.

Both the Bank and Vanguard filed timely objections to the Report. The Court has reviewed the Report and considered *de novo* those portions to which any objection has been filed. For the reasons that follow, HUD's motion to dismiss is granted in part; the Bank's second claim is dismissed with prejudice and the fourth claim is dismissed without prejudice. Vanguard's motion to dismiss is granted in part; claim five is dismissed without prejudice. Plaintiff's cross-motion for summary judgment is denied in its entirety. The Court, pursuant to Rule 15, Fed.R.Civ.P., grants plaintiff's motion to add the United States as a party defendant, and would entertain a motion by plaintiff to amend the complaint to state a negligence claim against the United States, and to state separate claims in

---

**1.** HUD originally challenged the sufficiency of service as well, pursuant to Rule 12(b)(4), Fed. R.Civ.P. Since the Bank has produced affidavits confirming that service on the United States and HUD was effected in accordance with the requirements of Rules 4(d)(4) and 4(d)(5), Fed. R.Civ.P., the issue of service is now moot.

fraud and in breach of contract against Vanguard. Plaintiff is directed to renew any outstanding discovery requests it considers appropriate in view of the current posture of the case, and to conduct further discovery as needed. Accordingly, plaintiff's motion seeking an order compelling discovery is denied as moot.

## BACKGROUND

On December 20, 1976, Israel and Kathleen Rodriguez obtained a $31,000 mortgage from Vanguard in order to purchase a single family home in Central Islip, New York. Complaint ¶ 5; Exhibit A, annexed to Declaration of Jorge Guttlein, filed September 14, 1984 ("Guttlein Decl."). Vanguard submitted an application for Federal Housing Authority ("FHA") mortgage insurance on or about January 27, 1976. The Rodriguez mortgage was to be FHA-insured under the section 203 program, 12 U.S.C. § 1709.[2] FHA issued on February 2, 1976, a conditional commitment for mortgage insurance in the amount of $31,150, subject to the successful completion of certain repairs and improvements by August 2, 1976. Affidavit of Joseph Megna, filed September 14, 1984 ¶ 10; Exhibit E annexed to Guttlein Decl. This deadline was later extended to August 7, 1977. Affidavit of Howard Isenberg, filed September 14, 1984 ¶¶ 7–9 ("Isenberg Aff."); Exhibit I, annexed to Guttlein Decl.

Pursuant to the mortgage insurance application procedure in place during the period in question, FHA would inspect the property to verify the completion of all repairs specified in the conditional commitment and thereafter prepare a HUD Form 2051. Affidavit of Ralph Permahos, filed September 14, 1984 ¶¶ 3–5 ("Permahos Aff."). A mortgage insurance certificate ("MIC") could not be issued absent a completed 2051 form. Id. ¶ 6; Affidavit of Beryl Holder, filed September 14, 1984 ¶ 3.

Failure to complete the specified repairs before the expiration date "would automatically void [an] insurance application." Isenberg Aff. ¶ 8 n.*.

Vanguard has taken the position that "all steps required to cause the issuance of a [MIC] by HUD were in fact taken; and that for reasons unknown to Vanguard, the ministerial task of issuing the same was not done, or in the alternative, the [MIC] was lost." Affidavit of Harry James Reese, filed October 10, 1984 ¶ 6 ("Reese Aff."). Vanguard claims that the person who sold the property to the Rodriguezes established an escrow account to pay for the repairs required by the conditional commitment. Vanguard further asserts that the repairs were made, that HUD was notified and that Vanguard requested of HUD that it inspect the property to verify that the repairs were properly made. Id. ¶¶ 10–11.

Vanguard has produced no documents to substantiate its claims. Vanguard revealed the existence of the escrow account during the deposition of its vice president, Harry James Reese. Exhibit 11, annexed to the Affidavit of John T. Curran, filed October 26, 1984. HUD's records reveal that a 2051 form was never completed for the property, an MIC was never issued, and no mortgagee was billed for mortgage insurance premiums. Affidavit of Harold Haynes, filed September 14, 1984 ¶ 2; Affidavit of Thomas F. Tarbell, filed October 26, 1984 ¶¶ 8–9.

By agreement dated May 16, 1977, the Bank committed itself to purchase two million dollars worth of FHA (section 203) and/or Veterans Administration insured loans from Vanguard, including the Rodriguez mortgage. Exhibit M, annexed to Guttlein Decl. In the blanket commitment, Vanguard warranted that:

"as to each loan as of the date of purchase thereof by [the Bank]: ... (h)

---

**2.** The Report provides a detailed description of the procedure for obtaining mortgage insurance from FHA. See Report at 3–6. Familiarity with this procedure is assumed for purposes of this decision.

At the time in question, the Section 203 mortgage insurance program was operated by FHA,

which was then under the aegis of the Department of Health, Education and Welfare. The operation of the program was thereafter transferred to the Department of Housing and Urban Development. The Court will use the terms FHA and HUD to refer to the federal defendants, as the context requires.

... the annual [FHA] mortgage insurance premium has been paid to date or that the same is not due and is being currently accrued; that nothing has been done or omitted, the effect of which act or omission would be to invalidate the contract of insurance with the [FHA]...."

*Id.* Vanguard further represented in a "Statement Accompanying Assignment" dated August 4, 1977, that "F.H.A. Insurance [on the Rodriguez mortgage] is now in full force and effect." Exhibit N, annexed to Guttlein Decl. The Rodriguez mortgage was assigned to the Bank and the assignment recorded on July 21, 1977 in Suffolk County. Complaint ¶ 8; Reese Aff. ¶¶ 4, 12.

The MIC was not delivered with the mortgage. In response to an inquiry from the Bank's attorney, Vanguard, by letter dated September 12, 1977, advised the Bank that the original MIC had been misplaced by the FHA and that a duplicate certificate had been ordered. Affidavit of Paul G. Wood, filed October 26, 1984 ¶¶ 4–5 ("Wood Aff."); Exhibit J, annexed to Guttlein Decl. Vanguard, in a separate agreement delivered to the Bank, agreed to repurchase the Rodriguez mortgage in the event that the MIC was not delivered to the Bank within 60 days of the Bank's purchase of the mortgage. Exhibit K, annexed to Guttlein Decl.[3] The closing took place on October 4, 1977, at which time the Bank paid Vanguard the consideration for the Rodriguez mortgage. Affidavit of James V. Sorrentino, filed October 26, 1984 ¶ 8 & Exhibit 1, annexed thereto; Wood Aff. ¶¶ 6–10. An MIC was never transmitted to the Bank by Vanguard. *See* Exhibit P, annexed to Guttlein Decl. The Bank made its first demand to Vanguard to repurchase the Rodriguez mortgage on October 20, 1981, after it had learned from HUD that the mortgage had never obtained FHA-insured status. Exhibit P, annexed to Guttlein Decl. As set forth below, however, the mortgage had at that time been satisfied and the property transferred from HUD to the town of Islip.

HUD requires an applicant for mortgage insurance benefits to submit "full and proper documentation" along with its claim, including the mortgage, note, conditional commitment, firm commitment, MIC, and insurance benefit application form. HUD regulations further require conveyance to HUD of the property secured by the mortgage and satisfaction of the existing mortgage. Affidavit of Robert Swiger, filed October 10, 1984 ¶ 3; Exhibits T, B–1 & U, annexed to Guttlein Decl.; 24 C.F.R. §§ 203.355, 203.357 & 203.358.

After the Rodriguezes defaulted under their mortgage, the Bank commenced a foreclosure action in November 1978. In order to avoid further foreclosure action, the Rodriguezes agreed to execute and deliver a deed-in-lieu-of-foreclosure of the property. Complaint ¶¶ 10–11. On June 10, 1980, the deed-in-lieu-of-foreclosure was recorded, transferring title from the Rodriguezes to HUD. After having satisfied the mortgage, the Bank submitted to HUD a claim for mortgage insurance benefits, including all the required documentation—absent, of course, the missing MIC. *See* Exhibits R, S, T & A–1, annexed to Guttlein Decl. On August 20, 1980, HUD returned the Bank's claim because of, inter alia, its failure to include an MIC. Exhibit V, annexed to Guttlein Decl. The Bank resubmitted its claim on September 4, 1980, explaining in an accompanying letter that "[a]ccording to Vanguard Holding Corp. the original Mortgage Insurance Certificate was mis-placed by the FHA and a duplicate was ordered. To date we have not received it. Enclosed is a copy of their letter." Exhibit W, annexed to Guttlein Decl. HUD again refused to honor the

---

**3.** The repurchase agreement, embodied in an undated latter signed by Mr. Reese of Vanguard, provides as follows:

In connection with the above loan [i.e., the Rodriguez mortgage], we hereby agree to deliver to you the Mortgage Insurance Certificate with the FHA Insurance endorsement thereon within sixty days of the purchase of the loan by you.

In the event, for any reason, we are unable to deliver to you the aforesaid Mortgage Insurance Certificate within the time specified, we agree to re-purchase the above loan at the same price you purchased it from us.

claim. By letter dated September 10, 1980, HUD informed the Bank that an MIC was necessary because *"there is no record of this case ever being insured."* Exhibit X, annexed to Guttlein Aff. (emphasis added).

Subsequently, by letter dated July 8, 1981, the Bank inquired when it could expect payment of its insurance claim. HUD replied in a July 29, 1981 letter that the Bank had never resubmitted its claim, and that the Bank should refer to HUD's prior letter, indicating the lack of any record of FHA insurance. Exhibits Y, Z, annexed to Guttlein Decl.

Meanwhile, HUD's property disposition branch, which on August 18, 1980 had received notice of HUD's acquisition of the Rodriguez property, *see* Exhibits S, T, annexed to Guttlein Decl., was in the process of effecting transfer of the property to the Town of Islip, Long Island, under the federal Urban Homesteading Program. *See* 12 U.S.C. § 1706e; 24 C.F.R. § 590.17. On March 13, 1981, the property was sold to the Town of Islip for its appraised "as is" value of $8,000, after an inspection revealed $9,660 in required estimated repairs. Permahos Aff. ¶¶ 17, 21. The Town of Islip later sold the property to an independent buyer. *See* Exhibit E–1, annexed to Guttlein Decl.

At no time did HUD's property disposition branch check to determine if the property was insured before effecting its transfer. Indeed, HUD maintains there is no regulation, policy or procedure which would require it to do so. Permahos Aff. ¶ 15. HUD further asserts that there is no record of any attempt by either Vanguard or the Bank, prior to January 21, 1982, to contact the property disposition branch concerning the disposition of the property. *Id.* ¶ 22; Exhibit E–1, annexed to Guttlein Decl.

## DISCUSSION

To accept the report and recommendation of a magistrate to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record. *See* Rule 72, Fed.R.Civ.P., Notes of Advisory Committee on Rules (citing *Campbell v. United States District Court,* 501 F.2d 196, 206 (9th Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)). However, when timely objection has been made to a portion or portions of a magistrate's report, the district judge must "make a *de novo* determination ... of any portion of the magistrate's disposition to which specific written objection has been made." Rule 72(b), Fed.R.Civ.P.; *see also* 28 U.S.C. 636(b)(1). The judge may then accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations. 28 U.S.C. § 636(b)(1).

■ A district court's obligation to make a *de novo* determination of properly contested portions of a magistrate's report does not require that the judge conduct a *de novo* hearing on the matter. *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). It is sufficient that the district court "arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made." *Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir.1983). To this end, the court must "exercise ... sound judicial discretion with respect to whether reliance should be placed on [the magistrate's] findings." *American Express Int'l Banking Corp. v. Sabet,* 512 F.Supp. 472, 473 (S.D.N.Y.1981), *aff'd without opinion,* 697 F.2d 287 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982).

The Court now considers the parties' cross-motions to dismiss, which the magistrate converted, pursuant to Rule 12(b), Fed.R.Civ.P., to summary judgment motions. A court may grant the extraordinary remedy of summary judgment only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the

trier of fact. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–250, 106 S.Ct. 2505, 2509–2511, 91 L.Ed.2d 202 (1986)). While the party seeking summary judgment bears the burden of demonstrating the lack of material factual issues in dispute, *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983), "the mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

Although the movant faces a difficult burden to succeed, motions for summary judgment, properly employed, permit a court to terminate frivolous claims and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Ins. Co., supra,* 804 F.2d at 12. The motion then

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

As noted above, all parties in this action have moved or cross-moved for summary judgment. However, cross-motions for summary judgment do not warrant the granting of summary judgment unless the Court finds that "one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Frouge Corp. v. Chase Manhattan Bank,* 426 F.Supp. 794, 796 (S.D.N.Y.

1976). *See also Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau,* 766 F.2d 709, 716 (2d Cir.1985); *Schwabenbauer v. Board of Educ.,* 667 F.2d 305, 313–14 (2d Cir.1981); *Home Ins. Co. v. Aetna Casualty and Surety Co.,* 528 F.2d 1388, 1390 (2d Cir.1976).

## A. *The Bank's Claims Against HUD*

Plaintiff asserts four claims against HUD. Claim one alleges that HUD was unjustly enriched when it rejected plaintiff's claim for mortgage insurance after having instructed plaintiff to satisfy the mortgage and convey the property to HUD. Claim two sounds in conversion. Claim three asserts breach of an implied-in-fact contract. Claim four alleges misrepresentation and negligence. The Court will discuss each of these claims in turn.

### 1. *Claim One: Unjust Enrichment*

The Bank asserts an unjust enrichment claim against HUD, claiming that it satisfied the mortgage and conveyed the property to HUD upon HUD's express instructions, and that HUD's subsequent disposition of the property and refusal to honor the Bank's insurance claim caused HUD to be unjustly enriched at the Bank's expense. Complaint ¶¶ 12–17.

To prevail on a claim of unjust enrichment, a plaintiff must establish that " 'the defendant has at the plaintiff's expense been enriched and unjustly so, such as when the defendant receives requested goods or services without paying any compensation therefor.' " *Niagara Mohawk Power v. Bankers Trust Co., N.A.,* 791 F.2d 242, 244 (2d Cir.1986) (quoting *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 37 (2d Cir.1979)) *Accord, e.g., Rodgers v. Roulette Records, Inc.,* 677 F.Supp. 731, 740 (S.D.N.Y.1988) ("plaintiff must prove that defendant was enriched, that such enrichment was at plaintiff's expense, and that circumstances were such that in equity and good conscience defendant should compensate plaintiff").

There is no dispute that HUD was enriched when it took title to the property

and then refused to honor the Bank's insurance claim. The magistrate found issues of fact on the question whether that enrichment was unjust. Report at 13. Nevertheless, the magistrate recommended that the Bank's unjust enrichment claim be dismissed, on the ground that the Bank has an adequate remedy at law against Vanguard. The magistrate concluded that if the Bank's legal claims against Vanguard ultimately fail, it would be due to the Bank's own fault in allowing the limitations period to run or in failing to demand that Vanguard repurchase the mortgage before the Bank conveyed the mortgage to HUD. Report at 13–15.

In its objections to the Report, the Bank argues that it may unjustly be left without a legal remedy. The Bank contends that if its legal claims against Vanguard do ultimately fail, it would not be through the Bank's own fault, but rather because of its reliance on HUD's and Vanguard's negligence and misrepresentations, or because it is not permitted to assert a fraud claim. Plaintiff's Objections to the Magistrate's Report and Recommendations, filed August 5, 1987, at 13–18 ("Plaintiff's Objections").

Plaintiff does not dispute the general proposition that equitable relief is unavailable when there exists an adequate remedy at law. Moreover, "[a]n equitable claim cannot proceed where the plaintiff has had and let pass a adequate alternative remedy at law." *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1287 (2d Cir.1986) (citing cases). If plaintiff ultimately prevails on its legal claims, or if plaintiff's legal claims fail due to its own fault, then plaintiff will be unable to recover on its claim of unjust enrichment.

However, the Court is not prepared at this stage of the proceedings to resolve plaintiff's legal claims against Vanguard. Accordingly, the Court will not now dismiss plaintiff's unjust enrichment claim on the ground that plaintiff has an adequate legal remedy.[4] Because the Court agrees with the magistrate that issues of fact remain

with respect to the question whether HUD's enrichment was unjust, summary judgment is denied to both HUD and to plaintiff on plaintiff's claim one.

### 2. *Claim Two: Conversion*

In its second claim against HUD, the Bank alleges that HUD's "acceptance of the conveyance of the Property coupled with its refusal to return the Property to the Bank constitutes a wrongful conversion of the Property." Complaint ¶ 22. The magistrate recommended that this claim be dismissed, not on the basis of any of the procedural or jurisdictional objections raised by HUD, but rather because New York Law does not recognize a conversion claim for real property. Report at 30–31.

Plaintiff does not dispute that "[a]n action for conversion lies only with respect to personal, not real, property." *Boll v. Town of Kinderhook*, 99 A.D.2d 898, 899, 472 N.Y.S.2d 496, 498 (1984). Plaintiff argues instead that the conversion alleged is of the mortgage documents, not the real property itself. Plaintiff's Objections at 19.

Having made a de novo review of the record, the Court adopts the recommendation of the magistrate and dismisses claim two. Not only does the language in the Complaint unambiguously allege the conversion of "the Property," but the facts of the case convince the Court that no claim for conversion of the mortgage documents can be made out. Plaintiff acknowledges that absent the sale of the property to the town of Islip, it would have no conversion claim against HUD. "[T]he satisfaction could have been vacated prior to the improvident conveyance of the property by HUD to a third party, but by the time plaintiff learned that such action was warranted, the *property* was beyond the reach of plaintiff and the mortgage satisfaction could no longer be vacated." Plaintiff's Objections, at 19 (emphasis added). It was the sale of the property that de-

---

**4.** The federal rules expressly provide that a party may "state as many separate claims or defenses as he has regardless of consistency and whether based on legal, equitable or maritime grounds." Rule 8(e)(2), Fed.R.Civ.P.

prived plaintiff of its rights. Plaintiff has not suffered any loss due to any misappropriation of mortgage documents. Accordingly, claim two is dismissed with prejudice, and plaintiff's application for leave to replead its conversion claim is denied.[5]

### 3. *Claim Three: Breach of Contract*

■ In claim three, plaintiff asserts that HUD's refusal to honor plaintiff's insurance claim constitutes a breach of contract. Complaint ¶¶ 23–27. The magistrate has recommended that the Court dismiss the claim, on the ground that HUD never evinced any intent to be bound by any insurance contract absent a properly endorsed MIC. Report at 43. Plaintiff, however, does not base this claim on the non-existent MIC, but rather on the conduct of the parties. The magistrate properly noted that a contract implied in fact is " 'one sort of [an] express contract' where 'mutual manifestation of assent' is expressed not in words but by the conduct of the parties." Report at 43 (quoting A. Corbin, *Corbin on Contracts,* §§ 18, 19 (One Volume Ed. 1952); J. Calimari & J. Perrillo, *The Handbook of the Law of Contracts,* § 1–12, at 19–20 (2d ed. 1977)).

Plaintiff argues that by instructing plaintiff to convey the property to HUD and to satisfy the mortgage, by accepting the conveyance and then selling the property to a third party, HUD manifested an agreement to honor plaintiff's insurance claim notwithstanding the absence of the MIC. It is a question of fact whether a party's conduct reflects an intent to be bound by an agreement. The Court is unwilling to conclude, at this time, that plaintiff's contract claim against HUD should be dismissed. A factfinder could properly conclude that by accepting the property from plaintiff and then selling it after having received an incomplete insurance claim, that HUD intended to honor plaintiff's insurance claim, notwithstanding the missing MIC. Accordingly, the Court denies both plaintiff's motion for summary judgment and HUD's motion for summary judgment on claim three.[6]

### 4. *Claim Four: Misrepresentation and Negligence*

■ In claim four, plaintiff alleges that HUD represented to plaintiff that the Rod-

---

**5.** Claim two, like claim four, is a tort claim against the government. As such, it is governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"). The Court's dismissal of this claim is not based on plaintiff's failure to name the United States as the proper defendant, nor on any determination that plaintiff may have failed to file an effective administrative claim. Rather, the Court concludes that a conversion claim cannot be made out against the United States, based on the undisputed facts of the case. Accordingly, any amendment of claim two to correct its formal deficiencies would be futile.

**6.** By reaching the merits of plaintiff's implied contract claim, the magistrate necessarily determined, without discussing, that the Court has subject matter jurisdiction over this claim. The Court agrees. Suits against the United States, or an officer or agency thereof, cannot be maintained unless there is "both a valid waiver of sovereign immunity and a grant of subject matter jurisdiction." *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 54 (2d Cir. 1985) (citing cases).

Section 1702 of Title 12, United States Code, authorizes the Secretary of HUD "to sue and be sued." This authorization constitutes a limited waiver of sovereign immunity, though it is not

in itself a grant of jurisdiction. *Choy v. Farragut Gardens 1, Inc.,* 131 F.Supp. 609, 613 (S.D.N.Y.1955) (Weinfeld, J.). *Accord, e.g., Johnson v. Secretary of and United States Dep't of Hous. and Urban Dev.,* 710 F.2d 1130, 1138 (5th Cir. 1983). Such a waiver applies only where recovery would come from funds controlled by the Secretary, and not from general federal treasury funds. *Falls Riverway Realty, Inc. v. City of Niagara Falls, supra,* 754 F.2d at 55–56 (construing "sue and be sued" clause of 42 U.S.C. § 1456(c)(1)). Applicable statutes and regulations required HUD to reserve sufficient funds to reimburse its own accounts for mortgage insurance upon the disposition of a property pursuant to the Urban Homesteading Program. 12 U.S.C. § 1706e; 24 C.F.R. § 590.17(b)(3). The recovery sought by plaintiff, then, would come from funds controlled by the Secretary. Accordingly, section 1702's waiver of sovereign immunity applies in this case. Because plaintiff's claim three arises out of federal common law, the Court's subject matter jurisdiction is properly founded on 28 U.S.C. § 1331. *See id.* at 55 n. 4 ("contracts with the government are governed by federal common law"). With a valid waiver of sovereign immunity and a proper basis for the Court to assert its subject matter jurisdiction, claim three is properly before the Court.

riguez mortgage was insured, and that HUD instructed plaintiff to convey the property to HUD and to satisfy the mortgage. Plaintiff further alleges that HUD accepted the conveyance of the property, yet has refused to honor plaintiff's insurance claim, return the property to plaintiff, or to compensate plaintiff in any manner whatsoever. Complaint ¶¶ 29–32.

The magistrate analyzed this claim as sounding in tort. As such, it is governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. ("FTCA"). Such a claim may properly be brought only against the United States, not against the federal agency employing the allegedly negligent employee. *See* 28 U.S.C. § 2679(a). Accordingly, the Secretary is an improper party and this claim must be dismissed.

Plaintiff, though, has requested leave to amend its complaint to assert this tort claim against the "United States of America and Department of Housing and Urban Development." Plaintiff's Notice of Cross–Motion, filed October 26, 1984. Concluding that claim four "states a viable cause of action pursuant to the FTCA for HUD's alleged negligent transfer of the property to the Town of Islip, apparently in contravention of its own regulations," Report at 40, the magistrate recommended that plaintiff be granted leave to amend its complaint to assert its negligence claim against the United States.[7] There being no objection to this portion of the Report and no clear error, the Court adopts the magistrate's recommendation. Claim four is dismissed and plaintiff is granted leave to amend its complaint to assert a negligence claim against the United States.[8]

Plaintiff objects to the magistrate's recommendation that summary judgment be denied plaintiff on claim four. The Court lacks authority to grant summary judgment against a party not now named in the action. *See* Rule 19, Fed.R.Civ.P. Accordingly, plaintiff's motion for summary judgment on claim four is denied without prejudice to renewal following the filing of an amended complaint naming the United States as a defendant and following the entry of an appearance in this action by the United States.

### B. *The Bank's Claims Against Vanguard*

Claims five and six of plaintiff's complaint are directed against Vanguard. Claim five asserts both a fraud claim and claim based on alleged breach of the original mortgage purchase agreement. Claim six alleges breach of the repurchase agreement.

#### 1. *Claim Five: Fraud and Breach of Contract*

Plaintiff asserts in claim five that "Vanguard represented and warranted to plaintiff that the Mortgage was originated in accordance with all applicable FHA regulations and further represented and warranted to plaintiff that the Mortgage ... was fully insured by FHA.... [and] [s]aid representations and warranties were false...." Complaint ¶¶ 34–35. The magistrate construed claim five as asserting two separate causes of action: one for fraud, and the other for breach of contract. The Court accepts the magistrate's inter-

---

**7.** Since an action against the Secretary of Housing and Urban Development in his official capacity is "equivalent to a suit against HUD," *Falls Riverway Realty v. City of Niagara Falls, supra,* 754 F.2d at 52 n. 1, the magistrate considered an amendment to name the Department as a defendant to be unnecessary. The Court agrees.

**8.** To the extent that claim four can be construed as asserting a fraud claim, it cannot be brought pursuant to the FTCA. 28 U.S.C. § 2680(h). The Court adopts the magistrate's construction

of claim four as a negligence claim. Upon amendment of its complaint, the Bank must more distinctly and clearly set forth its allegations of negligence against the United States. *See* Report at 31–32.

The Court notes that the magistrate concluded that plaintiff had filed an effective administrative claim, which is a jurisdictional predicate for any claim brought pursuant to the FTCA. There being no objection to this portion of the Report and no clear error, the Court adopts the magistrate's recommendation.

pretation of claim five, and will analyze the claim accordingly.[9]

### a. *Fraud*

■ The magistrate recommended that the claim sounding in fraud be dismissed. The complaint lacks any allegation of scienter: a claim that Vanguard actually knew that the Rodriguez mortgage was not insured when it represented otherwise to the Bank. Absent any such allegation of scienter or deceit by Vanguard, claim five can only be construed as pleading constructive fraud or negligent misrepresentation. New York courts do not recognize a claim for constructive fraud unless the parties share a special relationship. A buyer-seller relationship is not such a special relationship. *Accusystems, Inc. v. Honeywell Information Sys., Inc.*, 580 F.Supp. 474, 480–81 (S.D.N.Y.1984). Accordingly, claim five must be dismissed insofar as it alleges constructive fraud.

The magistrate further recommended that plaintiff be denied leave to amend its complaint to assert a claim of actual fraud against Vanguard. Plaintiff argues that because evidence of Vanguard's scienter came to light only during discovery and because Vanguard continues to obstruct discovery, plaintiff should be permitted to undertake further discovery to further substantiate its claim of actual fraud, and should thereafter be permitted to amend its complaint. The Court is of the view that plaintiff now has in its possession adequate information to state a claim of actual fraud with sufficient particularity to satisfy the requirements of Rule 9(b), Fed.R.Civ.P. Plaintiff, however, has not yet formally requested leave to amend its complaint to assert a fraud claim against Vanguard. The Court will entertain such an application from plaintiff.

### b. *Breach of Contract*

■ The magistrate recommended that plaintiff be permitted to proceed with the contract component of claim five. Rejecting Vanguard's assertion that the repurchase agreement modified the May 16, 1977 agreement and left plaintiff with the sole remedy of repurchase, the magistrate recommended that "the resolution of this material fact depends on the parties' intent in executing the repurchase agreement." Report at 48. Since discovering the parties' intent involves disputed issues of fact, the magistrate recommended that the cross-motions for summary judgment be denied and the question resolved at trial. *Id.*

In its objections to the Report, plaintiff asserts that it is entitled to summary judgment on its contract claim against Vanguard. Plaintiff maintains that it had an agreement with Vanguard to purchase a block of FHA-insured mortgages, and that Vanguard warranted and represented that the Rodriguez mortgage was FHA-insured. Plaintiff further maintains that when Vanguard represented that the MIC was temporarily misplaced, Vanguard offered the repurchase agreement as protection for plaintiff and further inducement to proceed with the transaction. According to plaintiff, the repurchase agreement cannot possibly be construed as an invalidation of its rights under the May 16, 1977 agreement. Plaintiff's Objections, at 8–11.

Asserting that plaintiff's contract claim against it should be dismissed, Vanguard argues: (1) that the allegations of claim five are so indefinite that they fail to put Vanguard on notice of the conduct complained of and that amendment at this time would be unduly prejudicial; (2) that plaintiff's contract claim is barred by the applicable statute of limitations; and (3) that equitable estoppel bars plaintiff from asserting its contract claim.

---

9. Subject matter jurisdiction over plaintiff's claims against Vanguard is based on the Court's discretionary pendent party jurisdiction. Because federal district courts exercise exclusive jurisdiction under the FTCA, it is appropriate for the Court in this case to assert pendent party jurisdiction over plaintiff's claims against Vanguard. Plaintiff's claims against HUD and against Vanguard clearly arise from a common nucleus of operative fact. If the Court were to refuse to assert its pendent party jurisdiction over plaintiff's claims against Vanguard, the Court would compel plaintiff to split its claims, resulting in a lamentable inefficiency and waste of judicial resources.

The Court concludes that claim five must be dismissed. Despite the liberal pleading rules in the federal courts, plaintiff may not assert two theories of liability in the same claim. *See Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423, 1443–44 (S.D.N.Y.1986) ("plaintiffs do not have the luxury of pleading in the alternative within the same cause of action"). The Court will, however, entertain a motion by plaintiff to amend its complaint to state a breach of contract claim against Vanguard.[10]

Once a defendant has filed a responsive pleading, granting leave to amend the complaint under Rule 15(a), Fed.R.Civ.P., falls within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Leave is to be freely given, and amendments as a general matter are favored in order "to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The Supreme Court, in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), set forth several circumstances that might justify a denial of leave to amend a complaint.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

On the record before the Court, it appears that none of the factors that would justify a denial of leave to amend are present in the instant case. There is no evidence that plaintiff acted in bad faith or caused undue delay. Plaintiff first learned of relevant evidence and vital information through the course of discovery, after the original complaint was filed. Vanguard cannot rightly claim prejudice, since the original complaint, although not adequately drafted, is sufficient to have put Vanguard on notice of plaintiff's claims of intentional fraud and breach of warranty. Although this case is now several years old, discovery has not advanced so far that further discovery necessitated by an amended complaint would constitute an unjust burden on Vanguard. It appears that additional discovery is required whether plaintiff were to amend its complaint or not. Finally, amending the complaint would not be an exercise in futility. Plaintiff has alleged sufficient facts to support a claim for breach of the May 16, 1977 agreement.

The parties agree that plaintiff's contract claim should be governed by the six-year limitations period provided in N.Y.Civ.Prac. L. & R. § 213(2) (McKinney 1972 & Supp. 1988). A cause of action on a contract claim accrues and the limitations period "begins to run from the time of the breach." *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 550, 389 N.E.2d 99, 102, 415 N.Y.S.2d 785, 788 (1979). *Accord, e.g., Marathon Enters., Inc. v. Feinberg*, 595 F.Supp. 368, 372 (S.D.N.Y.1984). The assignment of the mortgages from Vanguard to plaintiff was recorded in Suffolk County on July 21, 1977, and the sales transaction closed on October 4, 1977. On the latter date, plaintiff paid for the mortgages.

By entering into the repurchase agreement, the parties agreed that Vanguard would have 60 days beyond the "purchase of the loan" to produce the MIC for the Rodriguez mortgage and to perform on the contract. Accordingly, the alleged breach did not occur until the expiration of the sixty day grace period provided by the parties, when Vanguard failed to produce the MIC. *See G.P. Putnam's Sons v. Owens*, 51 A.D.2d 527, 378 N.Y.S.2d 637 (1976) ("Defendant's breach occurred when defendant failed to honor her obligations

---

**10.** Inasmuch as Vanguard has raised in its papers the issue of the propriety of such an amendment, the Court will discuss it here, notwithstanding that plaintiff has not yet sought leave to amend the contract component of claim five.

within the [grace] period provided in the agreement."). *Cf. Schmidt v. McKay,* 555 F.2d 30, 35 (2d Cir.1977) (where contract calls for performance other than the simple payment of money and no time for performance is specified, then a reasonable time for performance will be implied before the promisor will be deemed in breach).

The parties differ whether the "purchase" date in the repurchase agreement refers to July 21, 1977, when the mortgage assignments were recorded, or to October 4, 1977, when consideration was paid. The intent of the parties is an issue of fact, which can only be resolved by a jury. If the parties intended in the repurchase agreement to refer to the October 4 date, then plaintiff's cause of action accrued on December 4, 1977, and the action is timely. Accordingly, summary judgment is unavailable to Vanguard on the limitations issue.

Finally, as the magistrate explained in footnote 11 of the Report, equitable estoppel does not apply to preclude plaintiff from asserting its contract claim against Vanguard. Vanguard has simply failed to make out the elements of an equitable estoppel.[11]

Claim five is dismissed without prejudice. The Court will entertain a motion by plaintiff to amend its complaint to assert a fraud and a contract claim against Vanguard.

### 2. *Claim Six: Breach of Repurchase Agreement*

■ In claim six, plaintiff alleges that Vanguard breached its agreement to repurchase the Rodriguez mortgage when it failed to produce an MIC or to buy back the mortgage, despite plaintiff's demand for performance. Complaint ¶¶ 36–39. The magistrate recommended that this claim be dismissed. Since the mortgage had been satisfied and the property conveyed to a third party prior to the time plaintiff made its demand that Vanguard perform on its promise to repurchase the mortgage, the magistrate concluded that performance of the repurchase agreement was rendered impossible, thus discharging Vanguard of its duty to perform. Report at 50–52.

■ The magistrate correctly set forth the parameters of the impossibility defense. " '[W]hen performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation.' " Report at 51 (quoting *Walter E. Heller & Co. v. American Flyers Airline Corp.,* 459 F.2d 896, 900 (2d Cir.1972)). New York law imposes various limitations on the applicability of the impossibility defense. The defense is not available where the promisor is responsible for the event which makes performance impossible, or the event which renders the performance impossible could have been anticipated and provided for in the contract. *VJK Prods., Inc. v. Friedman/Meyer Prods., Inc.,* 565 F.Supp. 916, 920 (S.D.N.Y.1983). *Accord, e.g., Kel Kim Corp. v. Central Mkts., Inc,* 70 N.Y. 2d 900, 902, 519 N.E.2d 295, 296, 524 N.Y. S.2d 384, 385 (1987) ("the impossibility must be produced by an unanticipated

---

11. The elements of an equitable estoppel claim are: (1) an act constituting a concealment of facts or a misrepresentation; (2) an intention or expectation that such acts will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoer; (4) reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment. *Margate Inds., Inc. v. Samincorp., Inc.,* 582 F.Supp. 611, 619 n. 8 (S.D.N.Y.1984). The purpose of the equitable estoppel doctrine is to prevent the infliction of unconscionable injury and loss upon one who has relied on the promise of another. *American Bartenders School, Inc. v. 105 Madison Co.,* 59 N.Y.2d 716,

718, 450 N.E.2d 230, 230, 463 N.Y.S.2d 424, 424 (1983).

Vanguard's claim that plaintiff negligently failed to ascertain the absence of an MIC does not amount to an allegation of concealment or misrepresentation. Furthermore, Vanguard has not explained how it changed its position to its detriment in reliance upon plaintiff's failure to ascertain the absence of an MIC. Vanguard has not alleged any injury the Court could rightly consider unconscionable, nor any promise by plaintiff on which it relied. In this case, it seems, the promises were all on Vanguard's part.

event that could not have been foreseen or guarded against in the contract").

In the instant case, plaintiff's right to demand that Vanguard repurchase the Rodriguez mortgage matured in the latter part of 1977. Plaintiff, though, did not make its demand until October 20, 1981. Exhibit P, annexed to Guttlein Decl. In the meantime, plaintiff had already satisfied the mortgage as a necessary step in the HUD-mandated insurance claim procedure, and HUD had conveyed the property to the town of Islip. Throughout this period, plaintiff had numerous contacts with Vanguard regarding the missing MIC. Affidavit of Eugenie M. Wise, filed October 26, 1984. As late as September, 1982, Vanguard represented to plaintiff that the MIC had been issued, but was merely missing, and that Vanguard would produce the MIC. Sorrentino Aff. ¶ 5. It is undisputed that an MIC was never issued. Plaintiff's contention that its delay was caused by Vanguard's misrepresentations, and that it was lulled into believing that an MIC existed, raise issues of fact that preclude the Court at this time from accepting Vanguard's impossibility defense to plaintiff's claim six. A trier of fact must determine whether plaintiff's reliance on Vanguard's representations was reasonable, and whether Vanguard's representations caused plaintiff to satisfy the mortgage and HUD to convey the property to the town of Islip. Accordingly, summary judgment is denied to Vanguard and to plaintiff on claim six, and the claim must proceed to trial.[12]

## CONCLUSION

HUD's motion for summary judgment and Vanguard's motion for summary judgment are granted in part and denied in part. Claim two is dismissed with prejudice; claims four and five are dismissed without prejudice. Plaintiff's cross-motion for summary judgment is denied in its entirety. The Court grants plaintiff's motion to amend its complaint to add the United States as a defendant. In the event plaintiff desires to seek leave to replead the allegations contained in claims four and five, plaintiff is directed to serve and file a motion to amend its complaint in this regard on or before January 16, 1989 and to defer, until that time, its proposed amendment adding the United States. Plaintiff is directed to renew to renew any outstanding discovery requests it considers appropriate, in view of the present posture of the case, and the parties are directed to conduct further discovery as necessary. Accordingly, plaintiff's motion to compel production is denied as moot. The parties are directed to complete discovery by April 17, 1989 and to file a joint pretrial order on or before May 17, 1989.

It is so ordered.

---

12. Vanguard's argument that the expiration of the limitations period on claim six entitles it to summary judgment is without merit. The parties agree that the six-year period provided in N.Y.Civ.Prac. L. & R. § 213(2) (McKinney 1972 & Supp.1988), applies to this claim. The same factual issue regarding the date of "purchase" precluding summary judgment for Vanguard on plaintiff's claim five makes summary judgment on claim six inappropriate as well.